Folgeb, J.
By the judgment of foreclosure and sale in this case the referee was directed that, “ out of any moneys arising from such sale, after deducting the amount of his fees and expenses on such sale, and any lien o* liens upon said premises so sold, at the time of such sale, for taxes, assessments or prior mortgage,” he should pay costs and allowances, and the amount reported due to the plaintiffs.
It is to be observed of this direction, that it does not indicate how the referee shall ascertain and satisfy himself as to the existence, number ownership and amount of the liens; and it is at once apparent that the person most interested in ascertaining those facts correctly is the purchaser, who ordinarily will take his title subject to any lien which has not been discovered and satisfied. It is, therefore, with proper limitation, a reasonable article to be inserted in the terms of sale, as was done in this case, that “ all taxes, assessments and other incumbrances which, at the time of sale, are liens or incumbrances upon said premises, will be allowed by the referee out of the purchase-money, provided the purchaser shall, previous to the delivery of the deed, produce to the *315 referee proof of such liens, and duplicate receipts for the payment thereof.” It is reasonable; for, by a compliance with it, the referee may safely discharge his duty, and the purchaser has his best reliance, himself and his counsel, that his title, shall not be incumbered. Moreover, it is believed that this article, or one like unto it, has for many years been inserted in terms of sale when express terms have been used, and has been the mode agreed upon in which the referee should discharge that part of his duty. It has been for many years the customary course of practice in this State, for a decree of sale containing such directions, to be followed by terms of sale having such an article, and for the master or the referee, not himself to be the active agent in the inquiry for existing liens, but to await the production to him, by the purchaser, of the proof of the liens, and to pay them if within the capacity of the moneys in his hands, upon the surrender to' him of a voucher of payment by the purchaser. (See Post v. Leet, 8 Paige, 337.) General usage, indeed, long continued and hitherto unquestioned, has great force; and the practical construction of the law by so many public officers, though not given upon adverse litigation, has still much of the weight of judicial decision. (Troup v. Haight, Hopkins, 239-268.)
There is, however, this qualification to be made; this article in the terms of sale, may not be held to override or limit the direction of the order of sale, which is mandatory. By that direction the referee is bound, before making payment to any party, either on debt or cost, to deduct from the purchase-money enough to pay all existing liens, so that the terms of sale, by saying that the liens will be allowed provided the receipts be produced to the referee, cannot free him from the duty of deducting the amount of known liens from the purchase-money, though the purchaser neglect to produce the proof thereof. He is excused from the duty of making examination for the existence and amount of the liens, and from the responsibility for accuracy therein. But if there are to his knowledge such liens in existence, it *316 would be absurd to say that he may disregard the order under which he acts, and pay over the purchase-money as if there were not. And the remedy, in case of inaction in the purchaser, is by application to the court for its direction. And this meets the points made by the appellants, that the purchaser having made payments to the referee without producing the proofs of the existence of liens and of his payment of them, has waived his rights. He had a right to make payment of all the purchase-money to the referee. The terms of the decree require the referee to deduct from it the amount of the liens. Certainly, there is nothing to show that the purchaser intended to waive any right to have the liens paid out of it.
We hold, then, that the practice of the referee, up to the day of the sale and for a time subsequent thereto, was regular. . It remains to be seen whether the order appealed from gives any direction which, substantially interfering with the order of sale or the terms of sale, materially affects the rights of the appellants. It appears that the amount bid at the sale, and at which the premises were struck off, was $7,600. Of this the purchaser had paid to the referee, before the order of the twentieth of -December, now appealed from, the sum of $4,947.56, and he had tendered to him the farther sum of $540.57. This tender was at first refused by the referee, but, as appears by his affidavit of 19th of December, 1872, was afterward received by him, so that the whole amount of the purchase-money, received by the referee from the purchaser, was $5,488.03. The purchaser also produced to the referee a certified copy of the satisfaction of a prior mortgage upon the premises. The referee, before the 20th of December, 1872, paid from the moneys then in his hands, for costs of plaintiffs and of guardian acl litem, and upon the debt of the plaintiff, the sum of $2,696.48; and he claims to be entitled to retain other sums for his own fees and disbursements, and states that there was not actually in his hands, at the date of said order, more than $2,541.55. There is no definite statement of the exact amount of the liens by way of assessments *317 existing at the date of the sale; but it is stated by the referee in his same affidavit, that they amount to $3,132.23, with interest and expenses, and that in addition there are taxes, the amount of which is not given in the papers. It appears from these figures, and from certain figures in the order of sale, that the referee has paid to the plaintiff in the action, on his debt, the sum of $2,300, and upward. He had no right to thus pay this sum, until he had deducted from the purchase-money the taxes and assessments upon the premises. The terms of the order of sale did not permit it. It may be—it is probably so—that the purchaser has been remiss in not producing to the referee the papers and proofs which would warrant the latter to pay the amount of the taxes and assessments ; but this does not justify the referee in not keeping the purchase-money in his hands until the premises were cleared from the liens. All the papers show that there was notice to all concerned that they did exist. If the purchaser was sluggish or obstinate and did not produce the proof and receipts of payment, it did not justify the referee in shutting his eyes to the existence of these liens and ignoring them, and so disposing of the purchase-money as to leave the premises under these liens. He, the plaintiff, and the owners of the equity to the surplus money, if any, having notice of the existence of these liens, and knowing that by the order of sale they must be provided for by the referee, all stand before the court, on the 20th of December, 1872, as if he then had in his hands, from the proceeds of the sale, the sum of $4,800 and upward.
The order made on that day, which is the order appealed from, directed him to “ forthwith apply the purchase-money * * * to the payment and discharge of all taxes and assessments upon the mortgaged premises * * * under and pursuant to the * * * judgment.” So tar the order is not erroneous; it follows the judgment. It then directs the referee to execute to the purchaser “ a valid and sufficient deed” of the premises, upon a tender of the balance due of the purchase-money, viz., $92.95, and upon the production of bills of *318 the amount of the taxes and assessments, certified in the same manner as those presented to the court on said motion. How these were certified it does not appear. The phrase “a valid and sufficient deed,” in a contract for purchase and sale of land, would mean an operative conveyance which would transfer a good and sufficient title. (Fletcher v. Button, 4 N. Y., 396.) In this order, directing an officer of the court to convey, it means no more than a deed, in form and terms sufficient to make the title obtained by it as valid to the purchaser as it was in the power of the referee officially to make it.
Probably, the part of the order the most objected to by the appellants is that relating to the certified bills of the assessments; and the question to be determined as to that part of it is this: Does it materially affect or modify the provisions of the order of sale, or does it materially change the terms of the sale so as to substantially impair the rights of the appellants ? I do not perceive wherein it is not in accordance with the order of sale. It does not direct the payment of any lien which the order did not direct to be paid; nor can I see that it substantially changes the terms of sale. By both, the referee is to pay all existing liens by way of tax or assessment. The manner of bringing them .to the notice of the referee is not changed. By the terms of sale it is by the proof of the liens and duplicate receipts of the payment thereof. The mode of proof is not specified. The order does not do away with the necessity of proving them to the referee. It specifies what the mode of proof shall be, viz., bills certified in the same manner as those presented to the court on the motion. The proof of the existence of the liens was satisfactory to the court. The order makes it satisfactory to the referee and will protect him in acting in obedience to it, and does not in this respect vary the terms of sale, for there no particular mode of proof is stipulated for. Hence, other parties interested are not affected, and may not complain. Then, all that remains is the direction to pay, without payment having first been made by the purchaser. *319 This, so far as the appellants are concerned, is no substantial. variation from the terms of sale. All that they can demand, either by the force of the terms of sale or upon any consideration of their rights is, that no lien, by tax or assessment, shall be paid, which did not exist at the time of the sale. Neither a literal nor a liberal compliance by the referee with this order will do more than that. So far as the order imposes upon the referee a greater duty than be undertook under the order of sale and by the terms of sale, in that it puts upon him the physical labor of seeking the proper official persons and making payment to them of the taxes and assessments, it is a matter which does not interest the appellants.
The order appealed from should be affirmed, with costs.
All concur, except Rapadlo, J.. not voting.
Order affirmed.